1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHOROS C. GORDON,

Plaintiff,

v.

PACIFIC BELL TELEPHONE
COMPANY & DOES 1 TO 50,

Defendants.

No.  2:13-cv-02606-TLN-KJN

**ORDER**

The matter is before the Court on Plaintiff Christophoros Gordon's Motion to Remand (ECF No. 14).  For the reasons discussed below, Plaintiff's Motion to Remand is GRANTED.

I. **Background**

Plaintiff Christophoros Gordon ("Plaintiff") has been employed by Defendant Pacific Bell ("Defendant") in a variety of positions since February 21, 2000.  (Plaintiff's Complaint, ECF No. 1-1 ¶10.)  As an employee, Plaintiff is and has been represented by his union, the Communications Workers of America (the "Union").  (Defendant's Notice of Removal, ECF No. 1 ¶3.)  Defendant and the Union are signatory parties to a series of collective bargaining agreements which set forth provisions governing Plaintiff's wages, hours, and working conditions, including seniority, leaves of absence, available benefits, and a grievance and

1

1   arbitration process.  (ECF No. 1-1 ¶¶4-5.)

2          Plaintiff alleges that Defendant maintains a leave of absence policy which deducts a day

3   of seniority from an employee's initial start date with the company for every day of unpaid family

4   care and medical leave taken by the employee, which exceeds 30 days in a rolling 24 month

5   period.  (ECF No. 1-1 ¶8.)  More specifically, for every day of unpaid family care and medical

6   leave taken over the 30 allowable days in a 24 month period, Defendant shifts forward the

7   employee's start date with the company, which results in fewer days being counted toward an

8   employee's seniority.  (*See* ECF No. 1-1 ¶¶8-17.)

9          The implementation of this policy in Plaintiff's case is illustrative.  Plaintiff's original

10   start date with Defendant was February 21, 2000, thus, the number of days calculated for

11   Plaintiff's seniority began from this day.  (ECF No. 1-1 ¶¶10, 16-17.)  However, Plaintiff took

12   leaves of absence for the birth of his children and to bond with them, from January 26 to February

13   8, 2009; from January 5 to January 19, 2010; and from September 7 to October 18, 2011.  (ECF

14   No. 1-1 ¶¶ 13-15.)  Collectively, these absences resulted in a determination that Plaintiff had

15   exceeded the 30 days allowable (for the purposes of calculating seniority) by 26 days.  Thus,

16   Plaintiff's start day with the company was adjusted forward 26 days, from February 21, 2000 to

17   March 17, 2000.[1]  (ECF No. 1-1 ¶17; ECF No. 1 ¶23.)

18          Plaintiff construes this adjustment of his start date as a loss of seniority.  (ECF No. 1-1

19   ¶17.)  Therefore, he brings suit alleging a violation of the California Family Rights Act

20   ("CFRA"), Cal. Gov. Code § 12945.2(g), which states:

21                During a family care and medical leave period, the employee shall
                  retain employee status with the employer, and the leave shall not
22                constitute a break in service, for purposes of longevity, seniority
                  under any collective bargaining agreement, or any employee benefit
23                plan.  An employee returning from leave shall return with no less
                  seniority than the employee had when the leave commenced, for
24                purposes of layoff, recall, promotion, job assignment, and seniority-
                  related benefits such as vacation.

25   _____

26   [1] The Complaint is not clear as to the starting and ending dates of the 24 month period that Defendant invoked to
     determine that 26 extra leave days were taken; however the parties agree that Plaintiff's start date with Defendant
27   was adjusted forward by 26 days, from February 21 to March 17, 2000.  This determination forms the basis for this
     lawsuit.  (ECF No. 1-1 ¶17; ECF No. 1 ¶23.)

28                                              2

Cal. Gov. Code  § 12945.2(g).[2]  Plaintiff's lawsuit additionally seeks to represent a class of employees from Pacific Bell locations in California who experienced a "loss in seniority" under the same policy that affected Plaintiff.[3]  (ECF No. 1-1 ¶19.)

On January 26, 2012, the Union filed a grievance on Plaintiff's behalf, alleging that Defendant had violated Plaintiff's rights under the CFRA.  Defendant denied the grievance.  (ECF No. 1-1 ¶25.)  Defendant again denied the grievance at a subsequent hearing, on April 17, 2012.  (ECF No. 1-1 ¶26.)  On October 15, 2013, Plaintiff filed his Complaint in Sacramento Superior Court.  (ECF No. 1-1.)  On December 16, 2013, Defendant removed the case to this Court on the basis that the claims are completely preempted by § 301 of the federal Labor Management Relations Act ("LMRA") and § 502(a)(1) of the Employee Retirement Income Security Act ("ERISA").   (ECF No. 1 ¶¶38, 53.)  Defendant then moved to dismiss the Complaint.  (ECF No. 4.)  Subsequently, however, on January 14, 2014, Plaintiff moved to remand the case to state court.  (ECF No. 14.)  The Court deferred ruling on Defendant's dismissal motion pending its decision on the motion to remand.  (ECF No. 10, 15.)

As discussed below, the Court finds that complete preemption is not applicable in this case, and thus the Court does not have federal question jurisdiction.  Therefore, the case is remanded to the Sacramento Superior Court.  *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1447(c).

## II.  Legal standard

A defendant in state court has the right to remove the case to the federal court in the district where the state court proceedings are pending if the case could have been filed originally in federal court (i.e. on federal diversity or federal question grounds). 28 U.S.C. § 1441(a).

---

[2] The Complaint asserts three causes of action: one for the aforementioned CFRA violation, and two claims which derive from and are dependent on the CFRA claim.  As Plaintiff's Motion to Remand agrees, only the cause of action for the CFRA violation is relevant for this Court's preemption analysis.  Therefore, the Court confines its analysis here to the CFRA claim.  (*See* ECF No. 14-1 at 4, n. 2.)

[3] Specifically, Plaintiff seeks class certification of: "All persons who are or have been employed by PACIFIC BELL in the State of California, with more than one year of service with PACIFIC BELL, and who [have] at least 1,250 hours of service with [] PACIFIC BELL during the previous 12-month period, who, within four years of the filing of this Complaint, have experienced a loss of seniority following leaves of absence for unpaid family care and medical leave that exceeded 30 days within a rolling 24 month period."  (ECF No. 1-1 ¶19.)

3

1   Removal jurisdiction based on a federal question is determined from the complaint as it existed at

2   the time of removal.  *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1065 (9th Cir. 1979).  A

3   plaintiff may challenge removal via a motion to remand, and a federal court must order remand if

4   there is any defect which causes federal jurisdiction to fail.  28 U.S.C. § 1447(c).  Removal

5   statutes are strictly construed against removal.  *Libhart*, 592 F.2d at 1064.  The defendant bears

6   the burden of establishing that removal is proper.  *Gov't of Marinduque v. Placer Dome, Inc.,* 582

7   F.3d 1083, 1087 (9th Cir. 2009).

8

9   **III.  Discussion**

10          i.       Complete preemption

11          Under the well-pleaded complaint rule, a cause of action "arises under" federal law, and

12   removal is proper, only if a federal question is presented on the face of the plaintiff's properly

13   pleaded complaint.  *Franchise Tax. Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-12

14   (1983).  A federal defense to a plaintiff's state law cause of action does not appear on the face of

15   the well-pleaded complaint, and is therefore insufficient to warrant removal to federal court.

16   *Gully v. First Nat'l Bank*, 299 U.S. 109, 115-18 (1936).

17          However, the Supreme Court has determined that the preemptive force of some statutes is

18   so strong that they "completely preempt" an area of state law.  *See Metropolitan Life Ins. Co. v.*

19   *Taylor*, 481 U.S. 58, 65 (1987).  In these cases, a claim that is purportedly based on the

20   preempted state law is considered, from its inception, a federal claim, and therefore arises under

21   federal law.  *Balcorta v. Twentieth Century-Fox Film Corp*, 208 F.3d 1102, 1107 (9th Cir. 2000).

22          In the instant motion to remand, Defendant argues that Plaintiff's claims are completely

23   preempted under the LMRA § 301 and ERISA § 502(a)(1)(B).  (*See* ECF No. 1-1 ¶¶ 38-49, 49-

24   54.)  The Supreme Court has consistently applied the complete preemption doctrine under the

25   LMRA and ERISA.  *See Textile Workers Union of America v. Lincoln Mills of Alabama*, 353

26   U.S. 448, 456-57 (1957); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-11 (1985) (finding

27   complete preemption under the LMRA § 301).  *See Aetna Health Inc. v. Davila*, 542 U.S. 200,

28

4

1   209 (2004) (finding complete preemption under ERISA § 502(a)(1)(b)).

2          Therefore, this Court must determine if Plaintiff's Complaint falls within the purview of

3   complete preemption under the LMRA or ERISA.

4          ii.      Complete preemption under the LMRA

5          Section 301 of the LMRA states:

6              Suits for violation of contracts between an employer and a labor
               organization representing employees in an industry affecting
7              commerce … may be brought in any district court of the United
               States having jurisdiction of the parties ….
8

9    29 U.S.C. § 185(a).  As the Supreme Court has stated:  "The pre-emptive force of § 301 is so

10   powerful as to displace entirely any state cause of action for violation of contracts between an

11   employer and a labor organization.  Any such suit is purely a creature of federal law,

12   notwithstanding the fact that state law would provide a cause of action in the absence of § 301."

13   *Franchise Tax. Bd.,* 463 U.S. at 23 (internal quotations omitted).

14          Although the language of § 301 is limited to "[s]uits for violation of contracts," courts

15   have determined that, in order to give the proper range to § 301's policies of promoting

16   arbitration and the uniform interpretation of collective bargaining agreements, the doctrine of

17   complete preemption shall be construed to cover "most state-law actions that require

18   interpretation of labor agreements."  *Balcorta*, 208 F.3d at 1108 (citing *Associated Builders &*

19   *Contractors, Inc. v. Local 302 Int'l Bhd. Of Elec. Workers*, 109 F.3d 1353, 1356 (9th Cir. 1997)).

20   Accordingly, "[s]ection 301 preempts state law claims that are based directly on rights created by

21   a collective bargaining agreement, and also preempts claims that are substantially dependent on

22   an interpretation of a collective bargaining agreement."  *Aguilera v. Pirelli Armstrong Tire Corp.*,

23   223 F.3d 1010, 1014 (9th Cir. 2000).

24          As the Ninth Circuit has noted, however, "not every claim which requires a court to refer

25   to the language of a labor-management agreement is necessarily preempted."  *Associated Builders*

26   *& Contractors, Inc.*, 109 F.3d at 1357.  The United States Supreme Court has distinguished

27   between claims that require interpretation or construction of a labor agreement and those that

28
                                              5

require a court simply to "look at" the agreement.  *Balcorta*, 208 F.3d at 1108 (referencing *Livadas v. Bradshaw*, 512 U.S. 107, 123-26 (1994)).  Therefore the Ninth Circuit has "stressed that, in the context of § 301 complete preemption, the term "interpret" is defined narrowly – it means something more than 'consider,' 'refer to,' or 'apply'."  *Id.*  "[T]he totality of the policies underlying § 301 – promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the state's authority to enact minimum labor standards – guides [the court's] understanding of what constitutes 'interpretation'."  *Id.*

Turning to the instant case, this Court does not find that preemption pursuant to § 301 is applicable because Plaintiff's claim rests upon rights created by the CBA.  Plaintiff's Complaint articulates the policy of adjusting forward an employee's start date upon return from family care leave, if more than 30 days of family care leave was taken within a 24 month period.  Plaintiff then states that this policy violates the plain meaning of the CFRA, which provides that "an employee returning from leave shall return with no less seniority than the employee had when the leave commenced, for purposes of layoff, recall, promotion, job assignment, and seniority-related benefits such as vacation."  Cal. Gov. Code § 12945.2(g).  Plaintiff cites the legislative history of the CFRA for the proposition that the CFRA "should have the broadest possible implementation." (ECF No. 14-1 at 9.)  Plaintiff does not argue that a particular provision in his labor contract, or another provision of the CBA, was violated.  The thrust of Defendant's removal motion likewise is not based upon the notion that the CBA was violated.

Defendant's primary argument for removal is that an adjudication of Plaintiff's claim will require a substantial interpretation of the CBA.  In support, Defendant refers the Court to several provisions in the CBA that provide the framework for how seniority is calculated, and which Defendant states must be intensively analyzed and interpreted in the course of the Court's deliberation.  (ECF No. 1 ¶38-48.)  According to Defendant, this framework is as follows: Plaintiff is subject to the "California and Nevada Working Conditions," attached as Appendix A to the CBA.[4]  (ECF No. 1 ¶6.); section A1.06 of Appendix A states: "Seniority, whenever used in

_____

[4] To its Removal Motion, Defendant has attached documents that it states constitute relevant portions of 1) the CBA covering a term of April 5, 2009 to April 7, 2012, and 2) the CBA covering a term from April 8, 2012 to April 9,

this Contract, shall mean net credited service ["NCS"] as shown by the records of the company."
(ECF No. 1-4 at 109.);  "Net credited service" is also provided for in the AT&T Pension Benefit
Plan (the "Pension Plan").  (ECF No. 1 ¶7.); the Pension Plan provides that the amount of service
credit recognizable upon reinstatement from a leave of absence is provided for in the applicable
Leave of Absence ("LOA") policy.  (ECF No. 1-10 at 109.); in this case, Plaintiff's applicable
LOA policy is the AT&T West Bargained LOA policy.  (ECF No. 1-9 ¶3.);  that LOA policy
states: "'Term of Employment' or 'TOE', (also known as 'Net Credited Service' or 'NCS'),
means a period of employment with your Employer as determined by your Employer and the
[Pension] Plan Administrator (based on your Periods of Service)."  (ECF No. 1-9 at 8.); in 1994,
Defendant and the Union negotiated a Memorandum of Agreement in which the parties agreed to
the establishment of unpaid Family Care Leave ("FCL") and its impact on the accrual of seniority
for employees who utilize FCL.  (ECF No. 1 ¶10.); the FCL policy in this case then provides that
credited service may be given for "[a] maximum of 30 days once within any consecutive 24-
month calendar period; and service credit is granted only if Employee returns to work
immediately after expiration of the leave."  (ECF No. 1-9 at 26.)

Despite the apparent complexity of this analysis, however, Defendant has not indicated
any specific provision within the CBA that would require this Court's interpretation.  Defendant's
reference to *DFEH v. Verizon* 108 Cal. App. 4th 160 (2003) is instructive.  (Def.'s Opp. to Mot.
to Remand, ECF No. 16 at 8-9.)  In that case, the California Department of Fair Employment and
Housing brought an action against defendant employer, alleging that the employer violated the
CFRA by failing to pay an employee for time off taken under "family leave," when the employee
might have been eligible for payment due to her disability.  *Id*. at *162-63.  The appellate court
found the claim was preempted, because its adjudication required an interpretation of
management's right to investigate disabilities due to injury, and management's right in its "sole
discretion" to require an opinion from a non treating physician, all of which were framed by
provisions in the CBA.  *Id*. at *169-70.  As that court reasoned: the type and extent of the

2016.  Plaintiff does not object to the accuracy of these exhibits.  The Court has also not been made aware of any
discrepancy between the two CBAs that would alter its decision here.

7

investigation into an employee's disability that the employer was permitted to undertake, under the CBA, was ambiguous. *Id*. at 169-171. The measure of benefits payable to the employee, pursuant to this investigation, was also ambiguous. *Id*. In the instant case, however, Defendant does not point to any specific provision in the CBA that this Court would have to interpret. Based on the provisions of the CBA cited above, this Court understands that net credited service equates to seniority, and net credited service may not be given for more than 30 days of Family Care Leave taken in a 24 month period. Defendant has not shown that an interpretation analogous to that in *DFEH v. Verizon* is required in this case.

Defendant also references *Bachilla v. Pacific Bell Tel. Co.,* 2007 WL 2825924 (E.D. Cal. Sep. 25, 2007) in support of its position that a substantial interpretation of the CBA is required. (ECF No. 16 at 7-8.) In *Bachilla*, plaintiff employees filed a state action against defendant Pacific Bell, alleging, among other claims, breach of contract, fraud, and sex discrimination. *Id.* at *1. With respect to the breach of contract claim, plaintiffs argued that defendant violated various implied and oral contracts that promotions would be based on seniority, when in fact less senior male co-workers received promotions in the place of plaintiffs. *Id*. at *5. The court found the claim preempted because the subject matter of the alleged implied contracts was a job position covered by the CBA, and therefore an analysis of these implied contracts effectively required resort to the CBA. *Id*. With respect to the fraud claim, the court found that adjudication would require, among other things, a comparison of any alleged oral misrepresentations made to plaintiffs to provisions in the CBA such as seniority, promotion, and transfer. *Id.* at *7. With respect to the discrimination claim, the Court also found that adjudication required interpretation of the seniority provisions of the CBA. *Id*. at *8.

In this case, Defendant's position is that net credited service and/or seniority impacts matters covered by the CFRA, such as layoff, recall, promotion, job assignment, and vacation. However, Defendant does not identify any provisions of the CBA related to these matters that would require this Court's interpretation. Defendant argues that it is disputed whether the 26 days of seniority at issue here represents "previously accrued seniority" that was then deducted

1   from a total number of days, whether the 26 days was not counted toward seniority in the first

2   place, or whether a "loss" actually occurred pursuant to Defendant's implementation of the FCL

3   policy.  (ECF No. 16 at 2.)  However, Defendant does not identify specific provisions in the CBA

4   requiring this Court's interpretation, which would resolve this dispute.  Unlike *Bachilla*, in which

5   the court found that the claims directly implicated CBA provisions such as those relating to

6   seniority, promotion, and transfer, Plaintiff in this case claims only that the manner in which

7   Defendant implements the FCL policy – adjusting an employee's start day forward equivalent to

8   the number of excess FCL days taken – constitutes a "loss in seniority" under the CFRA.

9   Without more, the Court does not find that resolution of this claim is substantially dependent

10  upon an interpretation of the CBA.[5]

11          Plaintiff references *Lujan v. Southern Cal. Gas. Co.,* 96 Cal. App. 4th 1200 (2002) in

12  support of its position that how Defendant implements the FCL policy – adjusting an employee's

13  initial start date forward – merely presents the Court with a legal question of whether Defendant

14  has violated the CFRA.  In *Lujan*, through the collective bargaining process, the employer

15  implemented a compensation plan for its meter readers – a "pay per route [PPR]" plan – which

16  resulted, among other effects, in no fixed overtime rate being paid for hours worked in excess of

17  eight per day.  *Id*. at 1204.  The State Labor Commissioner brought an action in state court

18  alleging that the formula for calculating overtime wages violated the state's overtime law.  *Id*.

19  The employer then asserted affirmative defenses, including that the action was preempted by the

20  LMRA.  In declining to find LMRA preemption, the California appellate court found that the case

21  did "not present a disputed disagreement over interpretation of the [CBA] …. The parties do not

22  dispute how Employer calculates the overtime wages.  Thus, the issue is not how to resolve a

23  dispute over the interpretation of the PPR, but a legal question of whether the PPR complies with

24  state law."  *Id*. at 1210-11.  This Court finds, via analogous reasoning, that the issue presented for

25  adjudication here is a legal question of whether adjusting an employee's start date forward, as a

26  ───────────────

27  [5] *See also Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994) (referencing *Lingle v. Norge Div. of Magic Chef, Inc.,* 486
    U.S. 399, 413, n. 12 (1998) for the proposition that "the mere need to 'look to' the collective-bargaining agreement
    for damages computation is no reason to hold the state-law claim defeated by § 301.")

28
                                                        9

1   way of implementing Defendant's FCL policy, violates the CFRA.  Defendant has not shown that

2   this Court's interpretation of the CBA is required.[6]

3       Defendant has not met its burden of showing that removal is proper under the LMRA §

4   301.

5       iii.    Complete preemption under ERISA

6       The purpose of ERISA is to "protect … the interests of participants in employee benefit

7   plans and their beneficiaries" by setting out regulations for employee benefit plans and to

8   "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C.

9   § 1001(b); *Aetna Health, Inc., v. Davila*, 542 U.S. 200, 208 (2004).  Accordingly, ERISA also

10  contains a civil enforcement mechanism, codified in ERISA § 502(a), 29 U.S.C. § 1132(a), which

11  enumerates specific remedies that a plaintiff may seek for violation of his pension plan, including

12  the right to bring a civil action to recover benefits due under the plan, to enforce rights, and to

13  clarify rights to future benefits under the plan.  *See* ERISA § 502(a)(1)(B); 29 U.S.C. §

14  1132(a)(1)(B).  As the Supreme Court has observed: "The policy choices reflected in the

15  inclusion of certain remedies and the exclusion of others under the federal scheme would be

16  completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies

17  under state law that Congress rejected in ERISA."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54

18  (1987).  Therefore, a competing state-law cause of action that duplicates, supplements, or

19  supplants ERISA's enumerated enforcement provisions shall be considered pre-empted by

20  ERISA, because it "conflicts with the clear congressional intent to make the ERISA remedy

21  exclusive."  *Davila*, 542 U.S. at 209 (2004).

22      As the Supreme Court has further observed, the similarity of the language used in both the

23  LMRA and ERISA, combined with the intention of Congress "to make § 502(a)(1)(B) suits

24

25  _____

[6] In *Firestone v. Southern Cal. Gas Co.,* 219 F.3d 1063 (9th Cir. 2000), the Ninth Circuit considered the same "pay per route" system at issue in the *Lujan* case; the Ninth Circuit ultimately found Plaintiff's claims were preempted under the LMRA § 301.  *See Firestone v. Southern California Gas Co.,*281 F.3d 801 (9th Cir. 2002) (denying a
26  rehearing and affirming LMRA § 301 preemption).  As the *Lujan* court noted, in *Firestone*, the parties actually disagreed about which rate in the contract was the regular rate and thus about whether plaintiffs were receiving a
27  premium for overtime work.  Thus the Ninth Circuit considered interpretation of the CBA necessary and LMRA preemption was appropriate.  *See Firestone*, 281 F.3d at 802.

28

brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA," establish that the preemptive force of ERISA § 502(a)(1)(B) shall mirror the preemptive force of the LMRA § 301. *Davila*, 542 U.S. at 209 (2004) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). Thus, the ERISA civil enforcement mechanism "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id*. (quoting *Metropolitan*, 481 U.S. at 65-66) Hence, "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Id*. (quoting *Metropolitan*, 481 U.S. at 65-66).

In *Davila*, the Court articulated a two-pronged standard for evaluating preemption under ERISA § 502(a)(1)(B). "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted." *Davila*, 542 U.S. at 210.

In *Davila*, plaintiffs brought Texas state-court suits, alleging that their health maintenance organizations (HMOs) had refused to cover certain medical services in violation of a duty "to exercise ordinary medical care" under the Texas Health Care Liability Act, and that those refusals proximately caused their injuries. *Id*. at 200. The Court proceeded to examine the Complaint, the state statute on which the claims were based, and the various benefit plan documents. *Id*. at 210. As to the first prong, the Court found that plaintiffs' complaints ultimately consisted only in denials of coverage promised under the terms of their ERISA-regulated employee benefit plans. Upon the denial of benefits, plaintiffs could have paid for the treatments themselves and then sought reimbursement through a §502(a)(1)(B) action. *Id*. at 211. Therefore the first prong was met. The Court found that the second prong was met, because if defendant correctly concluded that the terms of the pension plan did not cover plaintiffs' requested treatment, and therefore denied coverage based on what the pension plan said, then it was the failure of the plan itself to cover the requested treatment that was the proximate cause of plaintiffs' injury. *Id*. at 212-13.

1   Therefore, interpretation of the terms of the pension plan formed an essential part of the state law

2   claim. *Id.* at 213.  The state law causes of action were not independent of the federally regulated

3   contract itself.  *Id.*

4         A more recent 9th Circuit decision from *Marin General Hosp. v. Modesto & Empire*

5   *Traction Co.*, 581 F.3d 941 (9th Cir. 2009) is instructive.  In *Marin*, a hospital (plaintiff) brought

6   suit in state court against defendants (the employer and its health care plan administrator) seeking

7   payment for a medical operation it had performed on an employee.  *Id.* at 947.  Prior to the

8   operation, the hospital had contacted the health care plan administrator and received oral

9   confirmation that the employee was insured through an ERISA plan and that the plan would cover

10  ninety percent of the medical bill.  *Id.*  The District Court found removal jurisdiction was proper

11  under ERISA preemption.  *Id.* at 944.  The Ninth Circuit applied the two-pronged *Davila* standard

12  and reversed. *Id.*  With respect to the first prong, whether the plaintiff could at some point have

13  brought a claim under ERISA § 502(a)(1)(B), the Ninth Circuit concluded that, because the

14  hospital sought payment pursuant to an oral contract, and not pursuant to the employee's ERISA-

15  regulated plan, Plaintiff was in fact suing for breach of a separate contract.  Therefore the first

16  prong was not met.  *Id.* at 948-49.  With respect to the second prong, whether an independent

17  legal duty was implicated by defendant's actions, the Ninth Circuit also found that the various

18  state-law claims asserted by the hospital arose out of an alleged oral agreement, not the terms of

19  the ERISA-regulated plan.  *Id.* at 950.  Since the state-law claims would exist whether or not an

20  ERISA plan existed, they were based on "other independent legal duties" within the meaning of

21  *Davila*.  *Id.* at 950.

22        Turning to the instant case, this Court concludes that Defendants have not met their

23  burden under *Davila* of showing that removal is proper.  With respect to the first *Davila* prong,

24  whether Plaintiff could at some point have brought the action under § 502(a) of ERISA, the Court

25  does not find that this prong is met.  Plaintiff in this case is alleging that the implementation of

26  Defendant's policy regarding excess FCL days – an implementation that consists of adjusting an

27  employee's start date forward – violates California law.  Plaintiff seeks reinstatement of accrued

28

12

seniority, to which he would be entitled but for this policy and how it was implemented. (ECF No. 14-1 at 13.) It is conceivable that this claim could be brought as an ERISA § 502(a)(1)(B) action to recover benefits, to enforce rights, or to clarify future rights under the ERISA-governed terms of Plaintiff's employment. However, Plaintiff is seeking damages for a loss of seniority and the implications of this loss for "layoff, recall, promotion, job assignment, and seniority-related benefits such as vacation." Plaintiff's claim thus would not be encompassed by an ERISA action, even if Plaintiff were to bring this type of lawsuit.

With respect to the second *Davila* prong, whether an independent legal duty is implicated by Defendant's actions, the Court also finds that this prong is not met. Plaintiff is suing pursuant to a duty created by the CFRA, which provides that an employee returning from leave shall suffer no loss in seniority. The FCL provision is contained in the "AT&T West Bargained Employee Leave of Absence Policy," and provides that a maximum of 30 days within a consecutive 24-month period shall be counted toward net credited service (i.e. seniority). (ECF No. 1-9 at 26.) Defendant implements this policy by adjusting an employee's start date forward if an employee's leave exceeds 30 days. Defendant has not shown that this provision arises from Defendant's pension plan, or that his claim falls within the purview of ERISA-governed terms of Plaintiff's employment. Whether or not an ERISA plan exists, Defendant has a state-law created duty to abide by the CFRA. *See Marin*, 581 F.3d at 950.

Defendant seeks support, generally, from *Monroe v. Pacific Bell* 2:96-cv-1307, ECF No. 62 at *2 (E.D. Cal. June 25, 1999), *aff'd*, *Monroe v. Pacific Bell*, 2000 U.S. App. LEXIS 24068 (9th Cir. 2000). In that case, the plaintiff took two leaves of absence while employed with defendant Pacific Bell. Following plaintiff's resignation, he applied for a cash-out of his benefits under the employee pension plan. *Id*. Pacific Bell paid Plaintiff a cash-out, but did not credit him any days of service for his second leave of absence. *Id*. Plaintiff eventually filed suit in state court with the Worker's Compensation Appeals Board, alleging that Pacific Bell had violated the California Labor Code § 132a by denying him the pension service credit. *Id*. at 2-3. Pacific Bell successfully removed the claim to federal court under ERISA complete preemption. *Id*. at 5.

13

1    However, in the instant case, the Complaint does not present a claim for payment of pension

2    benefits, under the terms of the Pension Plan.  Unlike the instant case, there is no indication in the

3    *Monroe* case that the plaintiff's start date was adjusted forward following family care leave,

4    which forms the basis for Plaintiff's claim here.  Therefore, the Court does not find the *Monroe*

5    ruling to be dispositive of the preemption issue in this case.[7]

6         Plaintiff seeks support, generally, from *Fucci v. Pacific Bell*, 2001 WL 182377 (E.D. Cal.

7    Feb. 5 2001).  In that case, plaintiff, an employee, brought suit in state court claiming that while

8    she was temporarily on total disability, her employer placed her on a company-initiated leave

9    ("CIL") of absence, terminated her health benefits, and informed her that there was no guarantee

10   of continued employment with the company, in violation of Cal. Labor Code § 132a.  *Id*. at *1.

11   Defendant sought removal to federal court, based in on part on ERISA complete preemption.  *Id*.

12   at *8.  In declining to find complete preemption viable, the *Fucci* court determined that the CIL

13   policy, the application of which was discretionary, provided that medical benefits would not be

14   paid when the employee was on CIL, and that it was defendant's decision to place plaintiff on

15   CIL that formed the basis for her claim under Cal. Labor Code § 132a.  *Id*. at *9.  This Court

16   finds that the court's disposition in *Fucci* supports Plaintiff's arguments here.  The thrust of

17   Plaintiff's claim concerns how Defendant implements family care leave, and not a particular

18   provision in the Pension Plan that is said to violate the CFRA.  This Court has not been directed

19   to a specific provision in the Pension Plan or another ERISA-regulated document governing

20   Plaintiff's employment, which would form the basis for Plaintiff's claim.  Rather, it is how

21   Defendant implements its FCL policy that Plaintiff claims is violative of California law.

22        Therefore, for the reasons discussed herein, Plaintiff's claims are not preempted by

23   ERISA § 502(a)(1)(B).

24

25   **IV. <u>Conclusion</u>**

26        Plaintiff's Motion to Remand (ECF No. 14) is GRANTED.  Defendant's Motion to

27   _____
     [7] See also *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 300 (2012) (finding ERISA preemption proper where the claim
     invoked specific provisions in the pension plan regarding calculation of benefits, and where Plaintiff's rights arose
     under the terms of the plan).

28
                                                14

1    Dismiss (ECF No. 4) is moot.  The case is remanded to the Sacramento Superior Court.

2

3    Dated: June 13, 2014

4

5

6                                                    Troy L. Nunley
7                                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          15